UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELIUS THOMAS,

    Plaintiff,                             Civil Action No. 08-11107

v.                                        HON.  MARIANNE O. BATTANI
                                          U.S. District Judge
                                          HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL              U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Cornelius Thomas brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability insurance benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On March 28, 2002, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset of disability date of March 2, 2001 (Tr. 55-57).  The claim was denied on July 12, 2002 (Tr. 38-40).  Plaintiff filed a second application for benefits on January 11, 2005, alleging disability as of March 4, 2004 (Tr. 50-52).  Upon denial of the second claim, Plaintiff requested an administrative hearing, conducted on March 15, 2007 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Henry Perez (Tr. 318). Plaintiff, represented by Barry Keller, testified, as did Pauline Pegram, Vocational Expert

("VE") (Tr. 320-337, 337-350). On July 20, 2007, ALJ Perez found Plaintiff not disabled between March 4, 2004 and April 24, 2005 based on the ability to perform sedentary work, but found him disabled as of his fiftieth birthday on April 25, 2005 (Tr. 20-21). The Appeals Council denied review of the claim on January 5, 2008 (Tr. 4-6). Plaintiff filed for judicial review on March 13, 2008.

## BACKGROUND FACTS

Plaintiff, born April 25, 1955, was age 52 when the ALJ issued his decision (Tr. 21). He completed high school and one year of trade school, working previously as a automotive assembler, Hi-Lo operator, and carpenter (Tr. 93, 98, 321-323). Plaintiff alleges disability as a result of lower back injuries (Tr. 92).

### A.     Plaintiff's Testimony

Plaintiff testified that he last worked in 2004 as a "Hi-Lo" operator (Tr. 321). Plaintiff, also a licensed carpenter, reported that he had been unable to work as a carpenter since herniating a lower back disc in a March 2, 2001 automobile accident (Tr. 322-323). He also reported former work as an automotive assembler, estimating that the job required him to lift up to 50 pounds (Tr. 322). Plaintiff testified that his condition created difficulty bending or standing for extended periods (Tr. 323). He alleged that the lifting and climbing requirements of his former jobs precluded his return to any of his former positions (Tr. 325-327).

Plaintiff alleged only minimal relief from 2004 physical therapy, adding that he had been taking Vicodin for the past year (Tr. 324). Plaintiff reported that steroid injections improved his condition temporarily, but did not provide long-term relief (Tr. 325). He testified that as a result of a June, 2006 heart attack, he currently took cholesterol and blood pressure medications (Tr. 327-328). He also reported that he underwent a partial colostomy

in 2001 (Tr. 329).

Plaintiff indicated that a typical day consisted of arising at 9:30 or 10:00 a.m., bathing, eating breakfast, resting, and dinner before retiring at 10:00 p.m. (Tr. 330). He denied participation in outside organizations, adding that he relinquished his voluntary church positions in 2002 as a result of injuries sustained in the 2001 accident (Tr. 330-331). Plaintiff reported that he kept his two story house maintained with the help of relatives and a landscape service, adding that a 2004 work attempt had been unsuccessful (Tr. 332-334). He estimated that he could sit for a maximum of one hour, stand for up to 20 minutes, and walk for half a block (Tr. 336). Plaintiff testified that lifting more than 10 pounds created back pain (Tr. 337).

**B. Medical Evidence**

**1. Treating Sources**

In April, 2001, orthopedic surgeon James E. Beale Jr., M.D. observed that Plaintiff continued to experience lower back tenderness following a car accident the previous month (Tr. 178). In May, 2001, Dr. Beale found that Plaintiff was unable to lift more than 20 pounds; walk, stand, or sit for prolonged periods; or push, pull, twist, turn, stoop or squat (Tr. 177). Dr. Beale prescribed steroids, Tylenol 3, and physical therapy between May and August, 2001 (Tr. 167-172). In August, 2001, an MRI of Plaintiff's lumbosacral spine showed a herniated disc at L5/S1 (Tr. 165). The same month, Dr. Beale prescribed a back brace and Ultram, opining that Plaintiff was disabled through September 29, 2001 (Tr. 159, 163).

September, 2001 results of an EMG showed "[n]o electrical evidence of radiculopathy or neuropathy in either leg"(Tr. 145). Neurologist Robert E.M. Ho, M.D. noted in October, 2001 that Plaintiff had experienced lower back pain radiating into his legs and "restricted

bending, lifting, and twisting" since a March, 2001 automobile accident (Tr. 148). Dr. Ho also noted that a June, 2001 colonoscopy resulted in a perforation of the colon (Tr. 148). In November, 2001, Plaintiff reported "constant and severe" lower back pain (Tr. 146). The following month, Dr. Beale found Plaintiff disabled through January 16, 2002 (Tr. 151).

In January, 2002, Dr. Beale ordered an EMG of the lumbosacral spine (Tr. 244). In June, 2002, Dr. Beale advised against lifting over five pounds along with a preclusion on repetitive bending, twisting, turning pushing, pulling, stooping, squatting, or stair climbing (Tr. 231). In October, 2002, Plaintiff reported continued left hip pain (Tr. 189). Dr. Beale noted that Plaintiff "desir[ed] to have his problem corrected if there is any possible surgical method" (Tr. 190).

In September, 2003, Dr. Beale prescribed Flexeril for continue back and leg pain (Tr. 199). In May, 2004, Dr. Beale characterized Plaintiff's condition as "unchanged" since his March, 2001 accident (Tr. 268). Also in May, 2004, Plaintiff reported good results from a steroid injection (Tr. 249). The same month, an MRI of his lumbar spine showed disc protrusion at L5-S1 and "minimal annular bulging at the remaining levels L2-L3 through L4-L5 causing mild inferior foraminal narrowing" (Tr. 269). In August, 2004, Raj Bothra, M.D. noted that Plaintiff's symptoms had "considerably improved" (Tr. 248). A physical therapy discharge summary from September, 2004 indicates that Plaintiff experienced a modest improvement in his pain level and range of motion after undergoing 18 sessions (Tr. 251).

In May, 2006, Plaintiff was admitted to the hospital after sustaining a heart attack (Tr. 316). The same month, Plaintiff underwent a heart catheterization without complications as well as a polypectomy for an unrelated condition (Tr. 300, 313). In February, 2007, Dr. Beale opined that Plaintiff was permanently disabled as a result of lumbar radiculopathy (Tr. 304).

### 2.  Consultive and Non-treating Sources[1]

In March, 2005, Plaintiff underwent a physical examination by a consultive internist (Tr. 287-293). The physician noted a history of lower back pain as a result of the 2001 automobile accident as well as a history of perforation of the colon requiring a colostomy (Tr. 287). A review of Plaintiff's cardiovascular, abdominal, musculoskeletal, and neurological systems revealed otherwise unremarkable results (Tr. 288). The internist concluded his evaluation by opining that Plaintiff's "[l]ongterm disability should be determined through [a] physiatry exam" (Tr. 289).

In June, 2005, a Residual Functional Capacity Assessment performed on behalf of the Social Security Administration found that Plaintiff retained the ability to lift 50 pounds occasionally and 25 pounds frequently; walk, stand, or sit for six hours in an eight-hour day; and an unlimited ability to push or pull (Tr. 135). The Assessment limited Plaintiff to *occasional* climbing, balancing, stooping, kneeling, crouching and crawling, but found the absence of visual, manipulative, communicative, or environmental limitations (Tr. 136-138).

### C.    Vocational Expert Testimony

VE Pauline Pegram classified Plaintiff's former work as a Hi-Lo operator as semi-skilled at the exertionally medium level of exertion; assembler and paint repairer as semi-skilled, light; and carpenter as skilled, heavy[2] (Tr. 338-339). She testified that Plaintiff

---

[1] A June, 2002 consultive examination (Tr. 183-188) and July, 2002 Residual Functional Capacity Assessment performed on behalf of Plaintiff's previous application for benefits, denied on July 12, 2002, are omitted from discussion (Tr. 125-133).

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;

-5-

retained transferrable skills from the Hi-Lo and carpentry work, finding that approximately 30,000 exertionally light industrial truck positions and 40,000 exertionally medium carpentry positions existed within the State of Michigan (Tr. 339-340). The ALJ then posed the following question to the VE:

> "Taking claimant's age, education and work experience into account, assume that such a person has an exertion limitation of lifting 50 pounds occasionally, 25 pounds frequently. If we impose further limitations of occasional climbing, balancing, stooping, crouching, kneeling and crawling putting this individual at the semi-skilled level, could such a person be expected to perform claimant's past relevant work?"

(Tr. 340). The VE replied that given the above limitations, the individual would be unable to perform his past work or transfer Plaintiff's job skills to another position (Tr. 341). The VE then testified that given the hypothetical limitations, "a small subset" of inspection jobs existed at the light exertional level (Tr. 342). However, the VE found that if Plaintiff's testimony that he was unable to lift more than 10 pounds was fully credited, he would be limited to "an even smaller subset" of optical inspection jobs at the sedentary exertional level (1,500 jobs in the regional economy) (Tr. 344). The VE concluded her testimony by finding that if Plaintiff's non-exertional limitations were fully credited, he would be unable to perform any full time work due to his inability to perform household tasks and need to recline frequently (Tr. 345).

### D. The ALJ's Decision

Based on the January 11, 2005 application for benefits, ALJ Perez determined that

---

*light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Plaintiff experienced the severe impairments of "disorders of the back and hypertensive cardiovascular disease based on the requirements of 20 C.F.R. § 404.1521" (Tr. 15). However, the ALJ found that the conditions did not meet or medically equal one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 15). The ALJ found that Plaintiff retained the Residual Functional Capacity:

> "[T]o perform sedentary work except for lifting over five pounds more than occasionally, prolonged standing, walking, or sitting, repetitive pushing and pulling, bending, twisting, turning, prolonged standing, walking, and sitting, climbing or reaching above waist level, and more than occasionally limited stooping and crouching."

(Tr. 15-16). Adopting the VE's job numbers, the ALJ found that although Plaintiff was not disabled between his alleged onset date of March 4, 2004 and April 24, 2005, his inability to perform non-sedentary work rendered him disabled as of his fiftieth birthday on April 25, 2005 pursuant to Medical-Vocational Rule 201.14 (Tr. 20-21).

In support of his partially favorable finding, ALJ Perez found Plaintiff's allegations of limitation "not entirely credible," noting that Plaintiff "came to the hearing in no apparent distress and did not require any assistive device" (Tr. 18). The ALJ also rejected Dr. Beale's March, 2007 opinion that Plaintiff was precluded from all work, finding that "[t]he course of conservative treatment pursued was not consistent with what one would expect if [Plaintiff] were truly disabled" (Tr. 19).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **Substantial Evidence**

Plaintiff, while not disputing the administrative finding that he was disabled as of his fiftieth birthday, argues that the ALJ's non-disability determination for the period between March 4, 2004 and April 24, 2005 is not supported by substantial evidence. *Plaintiff's Brief* at 4-5, *Docket #14*. Plaintiff, submitting a one-page brief in favor of a partial reversal, contends that the ALJ erred in rejecting his allegations of disability regarding the alleged onset date and his fiftieth birthday. *Id.* (*citing* Tr. 18).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Contrary to Plaintiff's argument, the ALJ's credibility determination satisfied both the

procedural and substantive requirements of SSR 96-7p.  The ALJ, acknowledging the presence of back disorders at Step Two of his findings, provided ample support for his conclusion that Plaintiff was nonetheless capable of sedentary work.  First, the ALJ noted that Plaintiff's activities of daily living ("ADLs") which included grooming, preparing meals, dining out, shopping, and light housework stood at odds with the claim that he was unable to perform sedentary work (Tr. 18, 117, 119-121).  Further, the ALJ reasonably concluded that Plaintiff's claim of disability was undermined by the fact that he had received only conservative treatment for his back problems (Tr. 19).  Finally, the ALJ permissively supported his credibility determination by noting that Plaintiff sat through the hearing "in no apparent distress and did not require any assistive device" (Tr. 19).  Because the credibility determination is well supported by substantial evidence, it should remain undisturbed. *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'").

      I also disagree with Plaintiff's two-sentence argument that the ALJ erred in rejecting Dr. Beale's February, 2004 disability opinion.  *Plaintiff's Brief* at 5.  While "[t]he medical opinion of the treating physician is to be given substantial deference," *Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992), in the presence of contradictory evidence, the ALJ may accord less than controlling weight to the treater's opinion provided that he provide "good reasons" for doing so.[3]  20 C.F.R. § 404.1527(d)(2).

---

[3]*Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)) holds that the ALJ must consider "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source.

Although the ALJ acknowledged that Dr. Beale treated Plaintiff regularly between March, 2001 and February, 2007, he rejected the treating physician's opinion on the basis that it contradicted Plaintiff's ADLs, imaging studies showing a non-disabling degree of limitation, and the lack of aggressive treatment:

> "Dr. Beale apparently relied quite heavily on the subjective report of symptoms and limitations provided by Claimant and seemed to uncritically accept as true most, if not all, of what he reported. His opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. . . . Dr. Beal[e]'s reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if Claimant were disabled.  The course of conservative treatment pursued was not consistent with what one would expect if Claimant were truly disabled, as reported"

(Tr. 19).   The ALJ's stated reasons for rejecting Dr. Beale's disability opinion, well supported by substantial evidence, do not provide a basis for reversal.

In closing, I note that the record contains some evidence supporting Plaintiff's contention that he was incapable of even sedentary work prior to his fiftieth birthday. However, the fact that I might draw a different conclusion from these facts is of no import. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                S/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated:  March 31, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 31, 2009.

                                                s/Susan Jefferson
                                                Case Manager